**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

EARL D. JOHNSON, JR.,                           *

Plaintiff,                                            *

v.                                                    *          Civil Action No. GJH-20-321

LT. ROBINETTE, et al.,                            *

Defendants.                                          *
                                                    ***

**<u>MEMORANDUM OPINION</u>**

Self-represented Plaintiff Earl D. Johnson, Jr., a prisoner currently confined at Roxbury Correction Institution ("RCI"), brings this civil rights action against Lieutenants Richard Robinette, William Penner, and Ronda Ralston.[1]  ECF No. 4.  Under consideration are Johnson's claim for retaliation and challenge to his placement in administrative segregation.  *See* ECF No. 7. On February 19, 2021, Defendants moved to dismiss the Complaint or for summary judgment to be granted in their favor.  ECF No. 35.[2]  Johnson opposed the Motion.  ECF No. 38.  After reviewing the filings, the Court finds that a hearing is not necessary to resolve the issues pending. *See* Local Rule 105.6 (D. Md. 2021).  For the reasons explained below, Defendants' Motion will be granted.

---

[1] The Clerk shall be directed to amend the docket to reflect the full names of Defendants.  Defendant Ralston was originally identified in the Amended Complaint as Lt. Roselyn.

[2] Defendants incorporate by reference their initial motion to dismiss or, in the alternative, for summary judgment, filed on February 19, 2021, ECF No. 15.  This motion was denied without prejudice subject to renewal when the case was stayed pending service on Defendant Ralston. Defendants also incorporate by reference the dispositive motion filed in *Earl D. Johnson, Jr. v. Sergeant Simmons, et al.*, Civil action No. GJH-20-559.  Ex. 1, ECF No. 15-2.

## I.   BACKGROUND

### A.  Plaintiff's Allegations

Johnson alleges he was on administrative segregation at Maryland Correctional Training Center ("MCTC") from December 12, 2019, through July 28, 2020, as a result of Defendant Robinette's failure to investigate "about what happen[ed]."  Amended Compl., ECF No. 4 at 1. Johnson asserts Defendant Ralston set him up by moving him from a single cell to a different cell with a door that did not lock in retaliation for filing a lawsuit against another officer.  *Id.*  He further claims that his grievance alleging Defendant Ralston unjustifiably moved him to a different cell went unanswered.  *Id.* at 1, 2-3.  Additionally, Johnson asserts Defendant Penner failed to assist him by identifying another officer with whom Johnson had a grievance and acted with reckless disregard by leaving Johnson in administrative segregation for almost eight months.  *Id.* at 1.

### B.  Defendants' Response

On December 16, 2019, at the Maryland Correctional Training Center ("MCTC"), Lt. Robinette placed Johnson on Administrative Segregation Pending Investigation ("ASPI") based on Johnson's statement that he feared remaining in his housing unit after claiming he had been robbed of commissary and personal property with a weapon.  Robinette Decl., ECF No. 15-3 at ¶ 4; ECF No. 15-2 at 44.  Generally, after initial placement on ASPI status, Lt. Robinette does not have continued involvement with the housing or status of an inmate.  ECF No. 15-3 at ¶ 5.  Instead, an Administrative Segregation Review team determines any changes to an inmate's housing placement through periodic meetings.  *Id.*  Inmates are seen by a team within 120 hours of being placed in ASPI status and every 30 days following placement.  ECF No. 15-2 at 39.

On December 18, 2019, an administrative segregation review team, consisting of Case Management members Croteau and Swope, Lt. Conley, and Sgt. Simmons, met with Johnson. Croteau attests that the team recommended Johnson be moved from AS120 to administrative segregation and added to the medium facility transfer list "because he was robbed at knifepoint and feared for his safety." ECF No. 15-2 at 70. On January 15, 2020, the same administrative segregation review team convened and determined that Johnson would remain in segregation and on the transfer list, to be removed from segregation on his date of transfer. *Id.* At this time, an investigation of the alleged robbery incident was still pending. *Id.* at 70-71.

Johnson's placement was reviewed on February 11, 2020; the team met with Johnson the following day at which time he was asked about pending civil suits against staff at MCTC. *Id.* at 39-40. Sgt. Simmons attests that when an inmate files a civil suit against an officer it is "normal to talk to the officer and inmate to ensure, and place in writing, that neither party fears for their safety." *Id.* at 40. When asked about the pending civil suits, Simmons avers that Johnson became angry and belligerent and made negative comments regarding the staff named in the lawsuit. *Id.* at 40, 72. The team determined that it was in Johnson and the staff's best interest for him to be transferred to another medium security facility and not return to general population. *Id.* The team's recommendation remained the same upon review on March 11, 2020; April 8, 2020; May 6, 2020; and June 3, 2020. *Id.* at 71.

On March 3, 2020, Croteau attests that the Warden forwarded to him an informal complaint from Johnson requesting removal from administrative segregation. *Id.* at 72. Croteau advised Johnson at the review meeting on March 11, 2020, that he needed to be transferred and that he would not be recommended for return to general population in light of the verbal hostility expressed towards the officer involved in his civil suit. *Id.*

3

Inmates recommended for transfer are placed on a transfer list sent to Division of Correction Headquarters, which notifies the MCTC transfer coordinator when a transfer placement becomes available. *Id.* Transfers were suspended on March 15, 2020, due to the COVID-19 pandemic. *Id.* Plaintiff's Amended Complaint indicates that he was transferred to RCI on or about July 28, 2020. ECF No. 4 at 1.

Prior to his placement on administrative segregation, on December 8, 2019, Johnson was moved from a single cell on Housing Unit #5, A-Tier, Cell #16 to a double cell on the same housing unit tier, Cell #31. ECF No. 37-3 at 2. Lt. Ralston attests that December 8, 2019 was her "regular relief day," and that she was not identified as the officer authorizing Johnson's housing assignment. Ralston Decl., ECF No. 37-4 at ¶ 6.

## C. Administrative Remedy Procedure Complaints

According to Defendants, Plaintiff filed three administrative remedy procedure complaints ("ARPs") between December 16, 2019, and February 6, 2020, when he filed his Complaint in this matter: ARP MCTC 1404-19; ARP MCTC 0062-20, and ARP MCTC 0063-20. Exhibit 1, ECF No. 15-2 at 33, 78. The Court previously summarized these ARPS in *Johnson v. Simmons, et al.* GJH-20-559, ECF No. 29 at 7-8 (citations omitted):

> ARP MCTC 1404-19, filed on December 20, 2019—concerning a complaint about four gang members coming to his cell with knives, threatening him, and stealing his property—was returned to Plaintiff under Code of Maryland Regulations ("COMAR") 12.02.28.11(A)(1), which indicates either that the request form was incomplete or that more information was required. According to Defendant Draper, Plaintiff did not timely resubmit his ARP, and it was therefore dismissed under COMAR 12.02.28.11(A)(2)(c)(ii), which provides, "[i]f the resubmission is not received by the date established by the facility ARC indicated in the notice provided under §A(2) of this regulation, the procedural dismissal on preliminary review is final." ARP MCTC 0062-20 and ARP MCTC 0063-20 were both filed on January 23, 2020, and were procedurally dismissed on the same day as repetitive of ARP MCTC 1404-19 pursuant to COMAR 12.02.28.11(B).

4

While ARP MCTC 1404-19 focuses on Plaintiff's allegations of stolen property, ARPs MCTC 0062-20 and 0063-20 also include Plaintiff's allegations that Lt. Robinette and Penner signed off on his placement in administrative segregation.  *See* ECF No. 15-2 at 81-85.  Defendants state that Plaintiff failed to pursue his grievances on these issues to the Inmate Grievance Office.  ECF No. 15-1 at 12 (citing ECF No. 15-2 at 19).

## II.    Standard of Review

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48 (emphasis in original). A court must view the evidence in the light most favorable to the nonmoving party, *Tolan v.*

*Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. NC. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.,* 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty*., 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth*., 149 F.3d 253, 260-61 (4th Cir. 1998). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261.

Because Defendants filed a motion styled as a motion to dismiss, or in the alternative, for summary judgment, Johnson was on notice that the court could treat the Motion as one for summary judgment and rule on that basis. Accordingly, the court will review the claims against Defendants under the Rule 56(a) standard and consider the exhibits filed in support of the dispositive motion. Johnson filed an opposition, but did not include any declarations with his opposition to Defendants' Motion, instead relying solely on his unverified amended complaint and

attached exhibits.  *See* ECF No. 38.  Because Johnson's amended complaint is unverified, its factual assertions may not be considered in opposition to Defendants' Motion.  *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); Fed. R. Civ. P. 56(c)(1)(A); *see also Abdelnaby v. Durham D & M, LLC*, No. GLR-14-3905, 2017 WL 3725500, at \*4 (D. Md. Aug. 29, 2017) (awarding summary judgment for the defendants, because the plaintiff could not "create a genuine dispute of material fact 'through mere speculation,' " and "[t]hus, the Court [wa]s left with a record that [wa]s bereft of evidence supporting any of Abdelnaby's arguments") (quoting *Beale v. Hardy*, 769, F.2d 213, 214 (4th Cir. 1985)).

The court is mindful, however, that Johnson is a self-represented litigant.  A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  But liberal construction does not mean a court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *See Weller v. Department of Social Services*, 901 F.2d 387, 391 (4th Cir.1990).  A court cannot assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

## III. Discussion

### A.  Exhaustion of Administrative Remedies

Defendants argue that Johnson's § 1983 claims must be dismissed because Johnson failed to exhaust his administrative remedies as required by the Prisoner Litigation Reform Act ("PLRA") prior to the filing of his Complaint.  ECF No. 15-1 at 12.  The PRLA provides, in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." *Id.* § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F. Supp. 2d 523, 527 (D. Md. 2003), *aff'd*, 98 Fed. App'x 253 (4th Cir. 2004).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215–216 (2007); *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). Additionally, an inmate must complete the prison's internal appeals process before bringing suit. *See Jones*, 549 U.S. at 202 (noting the PLRA requires prisoners to exhaust prison grievance procedures before filing suit); *see also Girard v. Chuttey*, 826 F. App'x 41, 44–45 (2d Cir. 2020) ("Because Girard filed his initial complaint in this action before the CORC had either decided his appeal or the thirty-day period to respond had elapsed, he failed to exhaust his remedies as to this grievance."); *Mitchell v. Bishop*, No. CV PX-18-933, 2019 WL 4059902, at *4 (D. Md. Aug. 28, 2019) ("Nor can [the plaintiff] save the claims by exhausting administrative remedies while this case is pending."); *cf. Chase*, 286 F. Supp. 2d at 530 ("The critical question is not whether the

Maryland prisoner grievance process currently is available to Chase, but rather whether those remedies were available to him on July 22, 1998, at the time when he filed this suit in federal court.").

A claim that has not been exhausted may not be considered in court – "exhaustion is mandatory." *Jones*, 549 U.S. at 211, 220; *see also Ross v. Blake*, 578 U.S. 632, 639 (2016) ("The mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion[.]" (quoting *Miller v. French*, 530 U.S. 327, 337 (2000))). However, "that edict contains one significant qualifier: the remedies must indeed be 'available' to the prisoner." *Ross*, 578 U.S. at 639; *see* 42 U.S.C. § 1997e(a).

An administrative remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 578 U.S. at 642 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). However, the *Ross* Court also identified three kinds of circumstances in which an administrative remedy is unavailable, and an inmate's duty to exhaust available remedies "does not come into play." *Id*. at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* at 643-44. The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

The Maryland Department of Public Safety and Correctional Services ("DPSCS") has made an "administrative remedy procedure" available to Maryland State prisoners for "inmate

complaint resolution." *See generally* Md. Code Ann., Corr. Servs. ("C.S."), §§ 10-201 *et seq.*; Md. Code Regs. ("COMAR") 12.07.01.01(B)(1) (defining ARP). The grievance procedure applies to the submission of grievances against Division of Correction officials or employees. C.S. § 10-206(a).

Regulations promulgated by DPSCS concerning the administrative remedy procedure define a "grievance" to include a "complaint of any individual in the custody of the [DOC] . . . against any officials or employees of the [DOC] . . . arising from the circumstances of custody or confinement." COMAR 12.07.01.01(B)(8). An inmate must exhaust the ARP process as a condition precedent to further review of the inmate's grievance. *See* C.S. § 10-206(b); *see also* COMAR 12.07.01.02(D).

To exhaust the ARP process, a prisoner must first file an ARP complaint with the warden of the prison within 30 days of the incident or when the prisoner gains knowledge of the injury giving rise to the complaint.  *See* COMAR 12.02.28.09(B). Second, if the ARP complaint is denied, or the inmate does not receive a timely response, a prisoner must file an appeal with the Commissioner of Correction within 30 days. *See* COMAR 12.02.28.14.B(5). If the appeal is denied, the prisoner must appeal within 30 days to the Inmate Grievance Office ("IGO").  *See* C.S. §§ 10-206, 10-210; COMAR 12.02.28.05(E), 12.02.28.18, 12.07.01.04, 12.07.01.05(B).  Inmates may then seek judicial review of the IGO's final determinations in a Maryland Circuit Court. C.S. § 10-210. However, "an inmate need not seek judicial review in State court in order to satisfy the PLRA's administrative exhaustion requirement." *Aurel v. Mailroom N. Branch*, No. CV ELH-14-2813, 2016 WL 3957647, at *8 (D. Md. July 21, 2016) (citing *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002).

Johnson filed two ARPs, MCTC 0062-20 and MCTC 0063-20, regarding Defendants' allegedly improper decision to keep him in administrative segregation. ECF No. 1-1. However, both were dismissed as repetitive of MCTC 1404-19. ECF No. 15-2 at 78. Defendants assert that Johnson did not file a complaint with the IGO as required, relying on a declaration from Pamela White, an Administrative Aide of the Inmate Grievance Office (IGO). *See* ECF No. 15-2 at 90-91. White states that as of May 5, 2020, a search of available records does not show receipt of a grievance filed by Plaintiff involving:

> …his allegations that he requested to be moved to Unit 2 and was told that he can't move there, he would have to be transferred. He states that should have been done two years ago not now for sure. The Plaintiff alleges that Lt. Kreetzer is bias to the outcome of the action of Sgt. Simmons and that he is being discriminated against because Lt. Kreetzer is the one who signs off on most of the ARPs. He also states that Lt. Kreetzer is being discriminatory by not stepping in on his transfer to JCI Jessup ASAP because Plaintiff states that he cannot be in a two man cell.

*Id.* at 90. However, the record is absent of any evidence showing that Plaintiff failed to file an appeal to the Commissioner of Correction and the IGO about his pending challenges to his administrative segregation and alleged retaliation by Defendants in this matter. As such, Defendants have not met the burden for this affirmative defense as to Johnson's challenge to his placement on administrative segregation. Moreover, as to Johnson's retaliation claim, Defendants put nothing into the record regarding whether Johnson filed an ARP regarding his claim of a retaliatory transfer by Lt. Ralston to a broken cell, which the record indicates took place on December 8, 2019. Defendants only produce Johnson's ARP log after December 16, 2019. ECF No. 15-2 at 78. Therefore, Defendants have also failed to meet their burden as to this claim and the claim will not be dismissed for failure to exhaust.

### B. Lieutenants Robinette and Penner

Defendants assert that the Amended Complaint should be dismissed as to Robinette and Penner because Johnson fails to allege any personal participation in the alleged constitutional violations. ECF No. 15-1 at 6. Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation. It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability under § 1983 must be supported with evidence that:

> (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Johnson does not challenge Lt. Robinette's decision to place him in administrative segregation, but rather the duration of his placement. ECF No. 4 at 1. The record shows, however, that after Johnson's initial placement, Lt. Robinette did not supervise nor participate in the administrative review team's decisions to keep Johnson in administrative segregation or any investigation of the events leading to his placement. Furthermore, there is nothing in the record showing that Lt. Penner was involved in any way with

Johnson's placement in administrative segregation.  *See* Penner Decl., ECF No. 15-4 at ¶ 5.  As such, Robinette and Penner are entitled to summary judgment in their favor.

### C.  Lieutenant Ralston

"Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights." *ACLU of Maryland, Inc. v. Wicomico Cty., Md.*, 999 F.2d 780, 785 (4th Cir. 1993) (citing *Perry v. Sindermann,* 408 U.S. 593, 597 (1972)).  A prisoner's claim that prison officials have retaliated against him for engaging in protected conduct is grounded in the First Amendment.  *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 285-87 (1977); *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999) (*en banc*).  A prisoner's clearly established rights are violated when a prison official retaliates against an inmate for filing a grievance. *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 546 (4th Cir. 2017).  In order to prevail on a claim of retaliation, a plaintiff must demonstrate (1) he engaged in protected First Amendment activity, (2) defendants took action that adversely affected him, and (3) a causal relationship between the protected activity and the defendant's conduct.  *See Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017).

Johnson's allegations against Lt. Ralston state that she "set [Johnson] up moving [him] out a single cell putting [him] in a Broken cell the Door didnt [sic] lock the light in there door show's [sic] close but it still be open I was set up for lawsuit filed on other officer…" ECF No. 4 at 1. Johnson attaches the grievance he submitted regarding the change in cell placement and asserts that it was not responded to because he was "being picked on…" *Id.* at 1, 2.  The grievance states Johnson was told by an unnamed officer that Lt. Ralston directed that he be moved back to a double cell.  *Id.* at 2.

Reviewing the facts in the light most favorable to Johnson, even if he was engaged in protected First Amendment conduct by filing suit against a correctional officer, the record does support a finding that any adverse action was taken against him nor that there was a causal relationship between the filing of the law suit and the alleged adverse action.  Lt. Ralston attests that she did not assign Johnson to any cell knowing that the door was broken.  Ralston Decl., ECF No. 37-4 at ¶ 9.  Moreover, Lt. Ralston was not the officer who authorized Johnson's move from a single cell to a double cell on December 8, 2019, nor was she aware that Johnson had filed a lawsuit against another correctional officer.  *See* ECF No. 37-3 at 2.  As such, there are no genuine facts in dispute for Johnson's retaliation claim to proceed to trial.  Accordingly, Defendant Ralston is entitled to summary judgment.

## IV.   CONCLUSION

By separate Order which follows, Defendants' Motion to Dismiss or in the Alternative, Motion for Summary Judgement, construed as a motion for summary judgment, is GRANTED. Judgment is entered in favor of Defendants Robinette, Ralston, and Penner.

___March 7, 2022_____                    /s/_____
Date                                                          GEORGE J. HAZEL
                                                                  United States District Judge